1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
KENT R. RAYGOR, Cal. Bar No. 117224
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:      (310) 228-3700
Facsimile:      (310) 228-3701
Email:          KRaygor@sheppardmullin.com

*Attorneys for Applicants Woori Bank and
Kwang Seok Kwon*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF WOORI BANK AND KWANG SEOK KWON PURSUANT TO 28 U.S.C. § 1782<br><br>*Applicants*. | Case No. 21-mc-80084-DMR<br><br>**APPLICANTS' OPPOSITION TO TEAMBLIND, INC.'S MOTION TO VACATE ORDER ON EX PARTE APPLICATION AND QUASH SUBPOENA OF APPLICANTS WOORI BANK AND KWANG SEOK KWON**<br><br>[Declaration of Kwang Seok Kwon, and Supplemental Declaration of Jae Ho Kim, Filed Concurrently Herewith]<br><br>Hearing Date: October 14, 2021<br>Time: 1:00 p.m.<br>Courtroom 4, 3rd Floor |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................................1

II.     TEAMBLIND CONTINUES TO EVADE ITS OBLIGATIONS IN THE
        KOREAN COURTS AND TO THIS COURT WHILE PROVIDING A
        PLATFORM THAT ALLOWS (IF NOT ENCOURAGES) THE
        DISSEMINATION OF DEFAMATION, HARASSMENT AND OTHER
        HARMFUL, UNPROTECTED SPEECH.................................................................2

        A.      Teamblind's Platform Allows If Not Encourages The Dissemination Of
                False Information, Defamation, Harassment, And Other Illegal Content.................2

        B.      Teamblind Refuses To Comply With Korean Courts And Authorities ....................3

        C.      Teamblind Has Similarly Evaded This Court's Orders .............................................4

III.    THE COURT PROPERLY ORDERED DISCOVERY TO REVEAL THE
        IDENTIFYING INFORMATION FOR THE ANONYMOUS PERSON(S) WHO
        DEFAMED MR. KWON ........................................................................................5

        A.      There Is No Right To Anonymously Defame Others...............................................5

        B.      The Statements Do Not Involve An Issue Of Public Concern, And So
                Applicants' Discovery Request Does Not Warrant A High Level Of
                Scrutiny ...............................................................................................................7

        C.      Applicants Meet The *Columbia Insurance* Factors...............................................10

        D.      Applicants Also Meet The *Highfields* Test ...........................................................11

                1.      Applicants' Evidence Establishes That The Statements Are
                        Defamatory Under Korean Law ...................................................................11

                2.      Applicants' Evidence Establishes That The Statements Are
                        Defamatory Under U.S. Law.......................................................................11

                        a.      The Posts Specifically Refer To Mr. Kwon ....................................12

                        b.      The Posts Make False Statements Of Fact About Mr. Kwon ..........13

                        c.      The False Statements In The Posts Are Defamatory On Their
                                Face (i.e., Have A Natural Tendency To Injure Mr. Kwon)............13

                        d.      Mr. Kwon Is Not A Public Figure And He Does Not Need
                                To Allege Actual Malice ...............................................................14

                3.      Applicants' Evidence Shows Mr. Kwon Suffered Actual Injury; The
                        Posts Injured Mr. Kwon's Reputation And Caused Him Great
                        Distress...............................................................................................16

                4.      Balancing Weighs In Favor Of Ordering The Discovery ...........................18

      E.      Teamblind's Other Contentions Are Irrelevant..........................................................20

IV.     CONCLUSION .............................................................................................................21

SMRH:4835-3382-2967.6

1

# TABLE OF AUTHORITIES

2

Page(s)

**FEDERAL CASES**

*Anonymous Online Speakers v. United States Dist. Court (In re Anonymous Online Speakers)*
  661 F.3d 1168 (9th Cir. 2011) ............................................................................... 6, 7

*Art of Living Found. v. Does 1-10*
  No. 10-CV-05022-LHK, 2011 U.S. Dist. LEXIS 129836 (N.D. Cal. Nov. 9, 2011) ........................................................................................................................ 6

*Chaplinsky v. New Hampshire*
  315 U.S. 568 (1942) ................................................................................................. 5

*Dun & Bradstreet, Inc. v. Greenmoss Builders*
  472 U.S. 749 (1985) ............................................................................................... 19

*In re Ex Parte Application of Jommi*
  2013 U.S. Dist. LEXIS 163201, 2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) ............................................................................................... 9, 10, 19

*Fodor v. Doe*
  No. 3:10-CV-0798-RCJ (VPC), 2011 U.S. Dist. LEXIS 49672 (D. Nev. Apr. 27, 2011) .......................................................................................................... 18

*In re Frontier Co.*
  No. 19-mc-80184-LB, 2019 U.S. Dist. LEXIS 125191 (N.D. Cal. July 25, 2019) ....................................................................................................... 9, 10

*Gertz v. Robert Welch, Inc.*
  418 U.S. 323 (1974) ....................................................................................... *passim*

*Highfields Capital Mgmt., L.P. v. Doe*
  385 F. Supp. 2d 969 (N.D. Cal. 2005) .................................................................. 7, 8

*Jacobson v. Schwarzenegger*
  357 F. Supp. 2d 1198 (C.D. Cal. 2004) .............................................................. 11, 12

*Kechara House Buddhist Ass'n Malay. v. Doe*
  No. 15-cv-00332-DMR, 2015 U.S. Dist. LEXIS 126124 (N.D. Cal. Sep. 18, 2015) ...................................................................................................................... 7, 8

*Milkovich v. Lorain Journal Co.*
  497 U.S. 1 (1990) ..................................................................................................... 6

*Music Grp. Macao Commer. Offshore Ltd. v. Does*
   82 F. Supp. 3d 979 (N.D. Cal. 2015) ............................................................ 8

*Quixtar Inc. v. Signature Mgmt. Team, LLC*
   566 F. Supp. 2d 1205 (D. Nev. 2008) ....................................................... 2, 7

*Smith v. Airborne Freight Co.*
   No. C-95-1299 SI, 1996 U.S. Dist. LEXIS 5607 (N.D. Cal. Apr. 18, 1996) .............. 14

*Tavoulareas v. Piro*
   817 F.2d 762 (D.C. Cir. 1987) ................................................................. 15

*United States v. Glassdoor, Inc. (In re Grand Jury Subpoena)*
   875 F.3d 1179 (9th Cir. 2017)............................................................. 19, 20

*US Dominion, Inc. v. Powell*
   No. 1:21-cv-00040 (CJN), 2021 U.S. Dist. LEXIS 150495 (D.D.C. Aug. 11, 2021) ....................................................................................... 6

*Wilens v. Automattic Inc.*
   No. 3:14-cv-02419-LB, 2015 U.S. Dist. LEXIS 88781 (N.D. Cal. Apr. 28, 2015) ......................................................................... 19

*In re Yuichiro Yasuda*
   No. 19-mc-80127-TSH, 2019 U.S. Dist. LEXIS 174001 (N.D. Cal. Oct. 7, 2019)............................................................................. 10

*In re Yuichiro Yasuda*
   No. 19-mc-80156-TSH, 2020 U.S. Dist. LEXIS 26242 (N.D. Cal. Feb. 14, 2020) .................................................................... 11, 19

**STATE CASES**

*Ampex Corp. v. Cargle*
   128 Cal.App.4th 1569 (2005) ............................................................. 15, 16

*Burnett v. Nat'l Enquirer, Inc.*
   144 Cal.App.3d 991 (1983)..................................................................... 14

*Glassdoor, Inc. v. Superior Court*
   9 Cal.App.5th 623 (2017)....................................................................... 19

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*
   247 Cal.App.4th 87 (2016) ..................................................................... 11

*Krinsky v. Doe 6*
   159 Cal.App.4th 1154 (2008) .................................................................. 19

*MacLeod v. Tribune Publ'g Co.*
　　52 Cal.2d 536 (1959)............................................................................... 12, 14

*Selleck v. Globe Int'l, Inc.*
　　166 Cal.App.3d 1123 (1985).......................................................................... 14

*Sommer v. Gabor*
　　40 Cal.App.4th 1455 (1995) ......................................................................... 14

*Washer v. Bank of Am. Nat'l Tr. & Sav. Asso.*
　　21 Cal.2d 822 (1943).................................................................................... 14

*Yelp Inc. v. Superior Court*
　　17 Cal.App.5th 1 (2017)........................................................................... 16, 19

*ZL Techs., Inc. v. Does 1–7*
　　13 Cal.App.5th 603 (2017) ............................................................................ 6

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

28 U.S.C. § 1782(a) ............................................................................................ 1

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

California Civil Code
　　§ 45............................................................................................................ 11
　　§ 45a........................................................................................................... 12
　　§ 48a(d) ..................................................................................................... 12

Cal. Const., Article I, § 2, subd. (a) ..................................................................... 19

**OTHER AUTHORITIES**

California Torts § 45.02 (Matthew Bender, 2021) .................................... 12, 14

# I.     INTRODUCTION

This Court appropriately permitted Applicants Woori Bank and Kwang Seok Kwon ("Applicants") to serve a subpoena under 28 U.S.C. § 1782(a) on Respondent TeamBlind, Inc. ("Teamblind") seeking to identify the anonymous users who made false, defamatory and injurious posts about Mr. Kwon on Teamblind's social media platform. (ECF 5 [Order].) Teamblind's motion to quash the subpoena ("Motion" [ECF 9]) completely ignores the key and obvious defamatory assertions in the posts about Mr. Kwon. Teamblind seeks to grant the user(s) who made the posts absolute anonymity (and therefore complete immunity) for their harmful and illegal statements. There is no constitutional or legal basis for Teamblind's position. Defamatory statements—statements that are false and tend to injure another's reputation—have no constitutional value. *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 340 (1974) ("there is no constitutional value in false statements of fact."). By contrast, courts recognize that society has a strong interest in preventing and redressing defamatory attacks upon reputation. "[T]he individual's right to the protection of his own good name 'reflects no more than our basic concept of the essential dignity and worth of every human being -- a concept at the root of any decent system of ordered liberty.'" *Id.* at 341 (citation omitted). The First Amendment does not give Teamblind's users a right to anonymously defame Mr. Kwon as they did in the posts at issue.

Here, the anonymous user(s) made the false factual claims that Mr. Kwon is the man pictured in a photo attached to each of the four posts. The photo depicted a middle-aged man being intimate with a much younger woman. The posts made the false factual claims that Mr. Kwon was "secretly [having] a drinking party while being shamefully physically affectionate with a young woman," and was, behind employees' backs, "wear[ing] an unbuttoned shirt while hugging a woman who looks to be younger than his daughter" and the woman in the photo was a hostess not Mr. Kwon's wife. (*See* ECF 1-3 [Jae Ho Kim Decl.], Exs. 1-4 [the "Posts" and "Photo"].) These allegations form the primary topic of the February 16 Post (*id.*, Ex. 1, 2), and are the only topic of the subsequent February 26 Posts (*id.*, Exs. 3, 4). (*See also* Section III.B below.) These allegations about Mr. Kwon's personal and private life are manifestly not about an issue of public concern, and they are all false. (Declaration of Kwang Seok Kwon filed herewith ("Kwon Decl."), ¶ 11.)

These false assertions are clearly defamatory under Korean and U.S. law. Indeed, they have the tendency to injure Mr. Kwon's reputation without need for explanation or innuendo, and so are defamatory on their face (per se defamatory). (Section III.D.2.c, below.) The Posts severely injured Mr. Kwon—damage that was increased by the fact that the Photo was repeatedly re-posted on Teamblind's platform and in news media. (Kwon Decl., ¶¶ 13-15.) Accordingly, as explained below, Applicants meet any of the potentially-applicable standards for discovering the identity of the anonymous Teamblind user(s) who made the Posts.

Teamblind's users did not have any right to defame Mr. Kwon in this manner, or to remain anonymous after having done so. Teamblind should be ordered to respond to Applicants' subpoena seeking information that could identify them.

**II.   TEAMBLIND CONTINUES TO EVADE ITS OBLIGATIONS IN THE KOREAN COURTS AND TO THIS COURT WHILE PROVIDING A PLATFORM THAT ALLOWS (IF NOT ENCOURAGES) THE DISSEMINATION OF DEFAMATION, HARASSMENT AND OTHER HARMFUL, UNPROTECTED SPEECH**

**A.   Teamblind's Platform Allows If Not Encourages The Dissemination Of False Information, Defamation, Harassment, And Other Illegal Content**

While Teamblind promotes itself as providing a forum that allegedly promotes "robust discussion of workplace issues," Teamblind conveniently ignores that Applicants are not before the Court because of any robust debate about workplace conditions. Applicants sought the aid of this Court because of anonymous Posts on Teamblind's service that *primarily* defame and harass Mr. Kwon with false claims *about his private life and alleged personal relationships* (see Section III.B), and otherwise contain, at best, content that Teamblind describes as "so outlandish that no rational person could believe them to be purported statements of fact." (Mot. at 14:24-15:13.) Indeed, the Posts at issue here exemplify the phenomena of anonymous internet speech: "where speakers remain anonymous there is also a great potential for irresponsible, malicious, and harmful communication, and the lack of accountability that anonymity affords is anything but an unqualified good." *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 566 F. Supp. 2d 1205, 1214 (D. Nev. 2008).

As shown in this instance and numerous others, Teamblind's platform (the "Blind" app) allows if not encourages the dissemination of false information, defamation, harassment, and other

illegal content by granting users anonymity and allowing them to post indiscriminately about anything without the fear of being known. For example, in South Korea, a country Teamblind specifically highlights in its Motion as a country in which the app is being widely used, and where Teamblind has an office, there have been many incidents of the aforementioned illegal activities. Such incidents include: (1) an employee at a Korean clothing company who quit his or her job based on the shame that resulted from false allegations spread through the entire company by the Blind app that he or she had an affair with another employee (Supplemental Declaration of Jae Ho Kim filed herewith ("Supp. Kim Decl."), ¶ 13, Ex. Q); (2) employees of Chanel Korea that had been victims of sexual harassment by a former employee were subjected to additional harassment on the Blind app, publicized to the entire company by the app (*Id.*, ¶ 14, Ex. R); (3) an employee at a large corporation in Korea who was harassed through the Blind app for his or her dress and appearance—harassment that the Blind app spread to a wide audience within the company (*Id.*, ¶ 15, Ex. S); and (4) an employee at a company in Korea who is contemplating quitting his or her job due to unverified, anonymously-made claims about his work performance on the Blind app, and another employee who had to defend herself when someone else used her name to make divisive posts on Blind (which is possible since users can choose any user name without verification) (*Id.*, ¶ 16, Ex. T.) Even when users are in immediate physical peril, Teamblind refuses to help identify them. Thus, in a recent case a company discovered that one of its employees had posted a suicide note on the Blind app complaining of harassment at work. The company immediately contacted the police, which in turn contacted Teamblind for information on the troubled employee. However, Teamblind refused to provide *any* information to help avert the employee's suicide.[1] (*Id.*, ¶ 17, Ex. U.)

**B.    Teamblind Refuses To Comply With Korean Courts And Authorities**

Not only does Teamblind refuse when asked to provide assistance, but it has also deliberately made it very difficult for authorities to enforce the law in the first place. Teamblind

---

[1] While Teamblind *claims* it does not have email address information, that claim has not been tested by a binding order that Teamblind provide such information. In any event, the subpoena here seeks other information that could help identify users, and Teamblind can and should provide any such information that it has.

developed and patented its sophisticated anonymizing technology for this very purpose, and has actively evaded Korean authorities and impaired their investigations by claiming that their CEO and their engineers are based in the U.S. and its servers are in the U.S. and cannot be accessed from Korea, and by otherwise refusing to allow its Korean office to cooperate with the Korean courts and authorities. In this case, Teamblind has refused to take any action to prevent the continued reposting and dissemination of the defamatory statements and Photo at issue, or provide any information in the civil actions Applicants brought against it in Korea, claiming (implausibly) that its Korean office does not have access to, or authority to access Teamblind's server here in the U.S. (ECF 1-4 [Paek Decl.], ¶ 14, 15.) Because it also *claims* that its anonymizing technology means that it cannot provide the specific identity of the user(s) who made the Posts, it refuses to provide *any information at all*, even information that might *indirectly* help identify the user(s). (*Id*.) Applicants have also been unsuccessful in seeking the aid of the Korean police, who have been unable to obtain any information from Teamblind.

Applicants were forced to seek the assistance of this Court because Mr. Kwon was the subject of patently defamatory attacks, speech that is not protected by the laws of Korea or the U.S., and Teamblind nevertheless refused to provide any information about the user(s) who made the Posts to the Korean courts or authorities.

## C.    Teamblind Has Similarly Evaded This Court's Orders

The Court Ordered Teamblind to attempt to serve the user(s) of the account(s) and user names that made the Posts at issue with a copy of the Court's Order and the subpoena. (ECF 5 [Order] at p. 5-6.) The declaration of Teamblind's CEO Sunguk Moon reveals Teamblind made no attempt to comply with this Order. (ECF 9-3 [Moon Decl.], ¶ 11.) Rather, Teamblind simply claims that because it has no "contact information" for the individuals associated with the user names, it apparently did nothing at all to try to comply with the Court's Order to provide notice to the user(s). (*Id*.) But it's explanation is inadequate and its claims are implausible.

First, Teamblind does not say that it made any attempt to search for contact information or means of contacting the user(s). What did it do to try to find out who the user(s) are or comply with the Court's Order?

Second, the user(s) indisputably have one or more accounts with Teamblind. It is incredible that Teamblind would be unable contact the user(s) through the account(s)—including by posting notifications or other messages to the account(s). In fact, Teamblind's platform and App apparently have direct messaging capabilities for sending users "DM's" (direct messages). (ECF 1-5 [Ex. B] at p. 5 ["I used up all of my DMs. How do I get more?"].) As the platform operator, ***Teamblind easily could have posted notifications or sent direct messages to the account(s) and provided them with the Order and subpoena***.[2] It did not do so. It could have even notified the user(s) that they will be barred from the platform unless they provide contact information. It did not do this either.

In sum, Teamblind appears to have acted with impunity towards this Court's Order, just as it has to the Korean courts and authorities.

## III.   THE COURT PROPERLY ORDERED DISCOVERY TO REVEAL THE IDENTIFYING INFORMATION FOR THE ANONYMOUS PERSON(S) WHO DEFAMED MR. KWON

### A.   There Is No Right To Anonymously Defame Others

Although the First Amendment protects speech, and provides a limited right to speak anonymously, the First Amendment does ***not*** provide a right to make defamatory statements nor a right to anonymously defame others.

> [I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (fns. omitted).

Indeed, "there is no constitutional value in false statements of fact"; "[n]either the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues." *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 340 (1974);

---

[2]  Because of user(s) ability to change user names Applicants do not know what the current account(s) or user name(s) for the user(s) are, but Teamblind does.

*US Dominion, Inc. v. Powell*, No. 1:21-cv-00040 (CJN), 2021 U.S. Dist. LEXIS 150495, at *24 n.7 (D.D.C. Aug. 11, 2021) (The "free trade of ideas" protected by the First Amendment "depends on a common understanding of the facts, which is undermined by provably untrue statements.")

Defamatory statements are those that are both false and tend to injure another's reputation. Such statements not only lack constitutional value, but they also severely harm important competing interests. In particular, the Supreme Court has "regularly acknowledged the 'important social values which underlie the law of defamation,' and recognized that 'society has a pervasive and strong interest in preventing and redressing attacks upon reputation.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) (citation omitted). "[T]he individual's right to the protection of his own good name 'reflects no more than our basic concept of the essential dignity and worth of every human being -- a concept at the root of any decent system of ordered liberty.'" *Gertz*, 418 U.S. at 341 (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (conc. opn. of Stewart, J.).) Accordingly, there is no First Amendment right to defame others.

There is also no First Amendment right to anonymously defame others. "The right to speak, whether anonymously or otherwise, is not unlimited." *Anonymous Online Speakers v. United States Dist. Court (In re Anonymous Online Speakers)*, 661 F.3d 1168, 1173 (9th Cir. 2011); *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 U.S. Dist. LEXIS 129836, *10 (N.D. Cal. Nov. 9, 2011) (The "right to anonymity is not absolute" and "[w]here anonymous speech is alleged to be unlawful, the speakers' right may give way to a plaintiff's need to discover the speaker's identity in order to pursue its claim.")

Moreover, courts recognize that while the Internet can foster a greater amount of discourse, the level of discourse can quickly deteriorate on the Internet, leaving little of value. "[C]riticism on the Internet is often so recklessly communicated that the harm to its targets, particularly in the financial arena, may extend far beyond what is covered by rules applicable to oral rhetoric and pamphleteering." *ZL Techs., Inc. v. Does 1–7*, 13 Cal.App.5th 603, 611 (2017) (citation omitted.) "When vigorous criticism descends into defamation, [] constitutional protection is no longer available." *Id*. This deterioration is particularly likely to occur when individuals are permitted to speak anonymously. As noted *supra*, "where speakers remain anonymous there is also a great

1  potential for irresponsible, malicious, and harmful communication, and the lack of accountability

2  that anonymity affords is anything but an unqualified good. This is particularly true where the

3  speed and power of internet technology makes it difficult for the truth to 'catch up' to the lie."

4  *Quixtar Inc.*, 566 F. Supp. 2d at 1214; *Anonymous Online Speakers*, 661 F.3d at 1176 (affirming

5  the district court's order of discovery in *Quixtar* and explaining that the district court correctly

6  "recognized the 'great potential for irresponsible, malicious, and harmful communication'"

7  afforded by internet anonymity).

8      The statements at issue here are clearly false and defamatory under Korean and U.S. law.

9  (*See* Section III.D.1 and 2.) Accordingly, the user(s) who made the Posts have no First

10  Amendment or other right to remain anonymous, and the Court should order Teamblind to

11  respond to Applicants' subpoena.

12  **B.     The Statements Do Not Involve An Issue Of Public Concern, And So Applicants'
13          Discovery Request Does Not Warrant A High Level Of Scrutiny**

14      Teamblind implies that the Posts address matters of public concern, and therefore deserve

15  heightened solicitude, including application of the test articulated in *Highfields Capital Mgmt.,*

16  *L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005).[3] (Mot. at 13:3-21) Not so. The Posts

17  primarily or exclusively concern false and facially defamatory statements about Mr. Kwon's

18  private life, not issues of public concern. They deserve no special solicitude.

19      Courts have adopted "a variety of standards to benchmark whether an anonymous

20  speaker's identity should be revealed" depending on the nature of the anonymous speech. *In re*

21  *Anonymous Online Speakers*, 661 F.3d at 1175. "A more rigorous standard may be applicable

22  where the speech at issue is political, religious, or literary, while commercial speech 'should be

23  afforded less protection.'" *Kechara House Buddhist Ass'n Malay. v. Doe*, No. 15-cv-00332-DMR,

24  2015 U.S. Dist. LEXIS 126124, *10 (N.D. Cal. Sep. 18, 2015) (quoting *Anonymous Online*

25

26  [3] Under the *Highfields* test, the Court examines first whether there is a real evidentiary basis for
    believing that the anonymous speaker has engaged in wrongful conduct that caused real harm to
27  the party seeking discovery. *Id.* at 975-76. If that threshold requirement is met, the Court will
    "assess and compare the magnitude of the harms that would be caused to the competing interests
28  by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Id.* at 976.

1  *Speakers*, 661 F.3d at 117). "'The specific circumstances surrounding the speech serve to give

2  context to the balancing exercise.'" *Id*. Courts have applied the test articulated in *Highfields* where

3  the statements at issue discuss matters of public concern, including, *e.g.,* seeking to warn the

4  public about an unreliable business or products, a cult or illegal conduct.[4] As Teamblind

5  acknowledges, the *Highfields* test may be appropriate "'when a large, powerful organization may

6  impact the lives of many individuals.'" (Mot. at 13:19-20.)

7         By contrast, the speech at issue here concerns Mr. Kwon's alleged personal, physical

8  encounter with an unknown young woman—an issue which plainly doesn't impact the lives of

9  "many individuals." Specifically, the Posts allege that Mr. Kwon is the person pictured in the

10  Photo being physically affectionate to a younger woman. The Posts do **not** allege Mr. Kwon's

11  actions were illegal, and they do **not** allege that the woman was a Bank employee, or that the

12  encounter happened in the office. Mr. Kwon's alleged personal relationship would **not** impact the

13  lives of anyone except himself, the woman and Mr. Kwon's family. Accordingly, Mr. Kwon's

14  alleged personal relationship is not an issue of public concern to his co-workers, or to the public at

15  large.

16         Furthermore, the defamatory allegations form the core of the Posts. For example, the

17  original February 16 Post is ***centered on*** the defamatory allegations that Mr. Kwon is the man in

18  the Photo allegedly being physically intimate with a much younger woman, repeatedly making

19  that assertion, and then trying to shame and disparage Mr. Kwon *for* that alleged encounter:

20         **This is the true identity of the boss** that we have trusted and followed.

21         While emphasizing the importance of leading an ethical life to 15,000 employees,
           behind our back, he secretly had a drinking party while ***being shamefully physically***
22         ***affectionate with a young woman.*** He did so while both employees and customers
           are going through such difficult times.

23

24  _____

    [4] *See, e.g., Highfields*, 385 F. Supp. 2d at 975 (speech was "sardonic commentary on a public
25  corporation" that "express[ed] dissatisfaction with the performance of the stock and the way
    company executives choose to spend company resources."); *Kechara House Buddhist Ass'n*, 2015
26  U.S. Dist. LEXIS 126124, *3-4 (statements at issue alleged that plaintiff religious organization
    was a cult and was associated with hate groups); *Music Grp. Macao Commer. Offshore Ltd. v.*
27  *Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015) (posts alleged that plaintiff company "designs its
    products to break in 3-6 months," "encourages domestic violence and misogyny," and that the
28  company's CEO "engages with prostitutes.").

In the long history of Woori Bank for more than 120 years, was there anyone who committed **such a shameful act?**

He shouts, "it is a time of crisis, so everyone should be devoted to sales." However, behind our back, ***he wears an unbuttoned shirt while hugging a woman who looks to be younger than his daughter.***

Indeed, where on earth is this place, and who is this woman in his arms…

Countless employees who are not even aware of ***his true identity*** are sweating at sales sites, working overtime at the head office, and sacrificing themselves for the bank.

However, thousands of employees' blood and sweat go to a waste for a pathetic man's nightly drinks **with a hostess**, (blood and sweats) flowing down the throats of such humans.

I can't help but lament. I'm even more furious because I trusted him. ***It is an act that completely ignores and betrays*** our long history as well as many seniors and juniors of the bank.

Sir!

Woori Bank is not your personal property, and employees are not just slaves running around and bowing down when you ask them to do so.

Woori Bank is a magnificent and noble product of tens of thousands of employees. Keep that in mind.

…

(ECF 1-3 [Jae Ho Kim Decl.], Exs. 1, 2.)[5]

Each of the February 26 Posts reposted and discussed the Photo, and nothing else. (ECF 1-3 [Jae Ho Kim Decl.], Exs. 3, 4.) In sum, the Posts are centered on the defamatory allegations about Mr. Kwon's alleged private life, and seek to shame and ridicule him for his alleged private life, not any issue of public concern.

Accordingly, the *Highfields* standard need not apply here. Rather the Court should apply the test articulated *Columbia Insurance v. Seescandy.com*, under which the plaintiff must:

> (1) identify the party with sufficient specificity that the court can determine that the party is a real person subject to suit;
> (2) identify all previous steps taken to locate and identify the party;
> (3) demonstrate that the action can withstand a motion to dismiss; and
> (4) prove that the discovery is likely to lead to identifying information.

*In re Ex Parte Application of Jommi*, 2013 U.S. Dist. LEXIS 163201, 2013 WL 6058201, at *4 (N.D. Cal. Nov. 15, 2013) (citing *Columbia Insurance v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal.1999) and granting discovery); *In re Frontier Co.*, No. 19-mc-80184-LB, 2019 U.S.

---

[5]  Even according to Teamblind, the remaining portions of this Post are, at best, "so outlandish that no rational person could believe them to be purported statements of fact." (Mot. at 14:24-15:13.)

1   Dist. LEXIS 125191 (N.D. Cal. July 25, 2019) (applying the *Columbia Insurance* test and granting

2   discovery because the application contained information and evidence sufficient to satisfy the

3   test); *In re Yuichiro Yasuda*, No. 19-mc-80127-TSH, 2019 U.S. Dist. LEXIS 174001, *8-9 (N.D.

4   Cal. Oct. 7, 2019) ("*In re Yuichiro Yasuda I*") (same).

5       Applicants meet the test set forth in *Columbia Insurance*. In fact, even if the *Highfields* test

6   is applied, Applicants meet it.

7   **C.    Applicants Meet The *Columbia Insurance* Factors**

8       *First*, Applicants specify that the account(s) with usernames "Ijlij!llij," "I Disagree" and

9   "Last Question," posted the defamatory statements. (ECF 1 [Application], at 3:7-27; ECF 1-3 [Jae

10  Ho Kim Decl.], ¶¶ 7-10, Exs. 1-4.) Courts in this district hold that anonymous account-holders

11  meet the first criteria of being real people subject to suit and identified with sufficient specificity.

12  *See, e.g., Jommi*, 013 U.S. Dist. LEXIS 163201, at *11; *In re Frontier*, 2019 U.S. Dist. LEXIS

13  125191, at *7.

14      *Second*, Applicants have undertaken substantial efforts to learn the identity of the Doe(s)

15  who made the Posts. (ECF 1 [Application], at 4:8-5:22; ECF 1-4 [Paek Decl.], ¶¶ 8-10, 14, 15.)

16  Applicants filed litigation in Korea against Teamblind's Korean office seeking discovery of

17  information to help identify the Doe(s) and also sought the assistance of the Korean police, all to

18  no avail. (*Ibid*.) Teamblind and their CEO have refused to comply with any and all discovery

19  requests made through the Korean courts.

20      *Third*, as discussed in detail in Sections III.D.1 and 2 below, Applicants submitted

21  evidence to establish that the Posts are false and defamatory, and to satisfy all the elements

22  necessary to establish defamation clams under Korean and U.S. law.

23      *Fourth*, the discovery sought is likely to help identify the Doe(s) who made the Posts.

24  (ECF 1-4 [Paek Decl.], ¶ 18.) The email address(es) of the user(s) who made the Posts would

25  identify them. In addition, for example, information on the date and time the account(s) were

26  created can be used to search the Bank's email systems for the email that Teamblind sent to the

27  user(s) to confirm that they work for the Bank. (*Id*.) IP address information could be used to

28

identify the individual internet subscriber(s) who registered for the account(s) that made the Posts. (*Id.*) Payment information would also identify the users. (*Id.*)

**D.      Applicants Also Meet The *Highfields* Test**

      **1.      Applicants' Evidence Establishes That The Statements Are Defamatory Under Korean Law**

Applicants submitted evidence that the Posts are defamatory under Korean law. (ECF 1-4 [Paek Decl.], ¶ 12.) Teamblind does not claim that this conclusion is incorrect. On this basis alone, the *Highfields* test is satisfied and "there is a 'real evidentiary basis' for believing that the anonymous speaker has engaged in wrongful conduct that caused real harm to the party seeking discovery." *See, e.g., In re Yuichiro Yasuda*, No. 19-mc-80156-TSH, 2020 U.S. Dist. LEXIS 26242, *17-18 (N.D. Cal. Feb. 14, 2020) ("*In re Yuichiro Yasuda II*") (where statements were shown to be defamatory under Japanese law, applicants had "shown that the anonymous defendant engaged in wrongful conduct and a 'real evidentiary basis' that the tweets caused real harm" and the *Highfields* test was satisfied.)

      **2.      Applicants' Evidence Establishes That The Statements Are Defamatory Under U.S. Law**

Furthermore, Applicants' evidence establishes a real evidentiary basis for believing the anonymous Posts are also defamatory under U.S. and California law. Libel is written defamation. Under California law, libel "is a false and unprivileged publication by writing … picture …  or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45; *J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, 247 Cal.App.4th 87, 97 (2016) (libel is "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged,[6] and (5) has a natural tendency to injure or causes special damage.") (citation omitted).

---

[6] Although listed as an "element," "[u]nder California Law, privilege is an affirmative defense." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1217 (C.D. Cal. 2004), superseded by statute on other grounds. Thus, a plaintiff need not establish that a statement is "unprivileged" unless "the

1  "A libel which is defamatory of the plaintiff without the necessity of explanatory matter,

2  such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face." Cal. Civ.

3  Code § 45a.[7] Statements that are libel on their face are actionable without pleading or proof of

4  special damages.[8] *Id.*

5  Applicants establish all of the elements for a claim of defamation under California law.

6  ### a.    The Posts Specifically Refer To Mr. Kwon

7  First, contrary to Teamblind's assertion (Opp. at 17:14-18), the Posts specifically refer to

8  Mr. Kwon. The first Post alleges that the man in the Photo is "the boss" of "15,000 employees."

9  (ECF 1-3 [Jae Ho Kim Decl.], Exs. 1, 2.) The Korean word used for "boss" ("우두머리")

10  typically refers to the highest "boss" of an organization or setting, and not just any mid-level

11  manager-type "boss," and therefore referred to Mr. Kwon as the highest-level boss at the Bank.

12  (Supp. Kim Decl., ¶ 6.) Furthermore, there is no other person who could be the boss of the Bank's

13  15,000 employees. (*Id.*) The man in the Photo resembles Mr. Kwon. (*Id.*, ¶ 8.) The Post also

14  discusses "what you [the boss] have done in one year" and then refers to two programs that Mr.

15  Kwon instituted in his first year as President (a no dress code policy and a program called "VG.")

16  (*Id.*, ¶ 6.) Each of the February 26 Posts reposted the same Photo, clearly refer to the same "you"

17  as the February 16 Post, and refer to the person in the Photo as the "leader." (ECF 1-3 [Jae Ho

18  Kim Decl.], Exs. 3, 4; Supp. Kim Decl., ¶ 7.) Other people understood that all the Posts and

19  defamatory statements therein referred to Mr. Kwon. (*Id.*, ¶¶ 8, 9; Kwon Decl., ¶ 13.)

20  ────────────────

21  complaint on its face shows that the allegedly defamatory statement was privileged." *Id.* There is no privilege apparent or applicable here.

22  [7]  This is the equivalent to a statement being libelous "per se," meaning actionable without the

23  need to establish special damages. "Under the majority common law rules of defamation, all libels are actionable per se. . . California, however, does not follow the traditional common law

24  approach;" rather "under California law, in order to constitute libel per se, a statement must be libelous on its face." 4 California Torts § 45.02 (Matthew Bender, 2021); *MacLeod v. Tribune*

25  *Publ'g Co.*, 52 Cal.2d 536, 548 (1959) ("At common law any written defamation or libel was actionable without proof of special damages, however, this court recognized a limitation on the

26  common-law rule when the defamatory meaning of the language used is not apparent on its face.

27  '***It is only when the libelous meaning of the publication is covert -- not apparent on the face of the language used -- that averment and proof of special damage is required.***'" (emphasis added).)

28  [8]  "Special damages" are economic damages. Cal. Civ. Code § 48a(d).

SMRH:4835-3382-2967.6     OPPOSITION TO TEAMBLIND'S MOTION TO QUASH SUBPOENA

### b. The Posts Make False Statements Of Fact About Mr. Kwon

Teamblind completely ignores the defamatory claims in the Posts, and contrary to Teamblind's assertions, the defamatory statements in the Posts are not "opinions" or "rhetorical hyperbole." Rather, first, the February 16 and 26 Posts alleged the provably false statements of fact that Mr. Kwon is the man in the Photo. The February 16 Post included the Photo and asserted "[t]his is the true identity of the boss that we have trusted and followed." (ECF 1-3 [Jae Ho Kim Decl.], Exs. 1, 2.) Similarly, each February 26 Post reposted the Photo and alleged that Mr. Kwon was the man pictured therein. (*Id.*, Exs. 3, 4.) The February 16 Post further alleged that Mr. Kwon "secretly had a drinking party while being shamefully physically affectionate with a young woman," that "behind our back, he wears an unbuttoned shirt while hugging a woman who looks to be younger than his daughter," and that the woman was a "hostess," and clearly not Mr. Kwon's wife. (ECF 1-3 [Jae Ho Kim Decl.], Exs. 1, 2; Supp. Kim Decl., ¶ 10; Kwon Decl., ¶ 8.) These false claims formed the core of the February 16 Post and the only topic of the February 26 Posts. (Section III.B., *supra*.)

All of these are statements of fact, and they are all false. (Kwon Decl., ¶ 11.) Thus, Mr. Kwon is not the man in the Photo. (*Id.*) He did not have a drinking party with the woman in the Photo. (*Id.*) He was not physically affectionate with the much younger woman pictured in the Photo who is not his wife. (*Id.*) He does not know who the woman or the man in the Photo are, and does know where the Photo was taken or who took it. (*Id.*)

### c. The False Statements In The Posts Are Defamatory On Their Face (i.e., Have A Natural Tendency To Injure Mr. Kwon)

The false statements that Mr. Kwon is the man in the Photo, who "secretly had a drinking party while being shamefully physically affectionate with a young woman," that "behind our back, he wears an unbuttoned shirt while hugging a woman who looks to be younger than his daughter" explicitly accuse Mr. Kwon of having a secretive physical relationship with a much younger woman who is not his wife. (ECF 1-3 [Jae Ho Kim Decl.], Exs. 1-4; Supp. Kim Decl., ¶ 10; Kwon Decl., ¶ 8, 13.) They expose Mr. Kwon to "hatred, contempt, ridicule, or obloquy" and have the natural tendency to injure Mr. Kwon's reputation without need for explanation or innuendo.

1   Therefore, they are libel on their face. *See, e.g., Selleck v. Globe Int'l, Inc*., 166 Cal.App.3d 1123,

2   1131-32 (1985) (explaining "[i]t is error for a court to rule that a publication cannot be defamatory

3   on its face when by any reasonable interpretation the language is susceptible of a defamatory

4   meaning," and holding that the imputation that the plaintiff had violated a personal confidence was

5   libelous on its face); *Burnett v. Nat'l Enquirer, Inc.*, 144 Cal.App.3d 991, 1013 (1983) (imputation

6   that the plaintiff was intoxicated in public and had acted in an embarrassing manner was libelous

7   on its face); *Sommer v. Gabor*, 40 Cal.App.4th 1455, 1473-74 and n. 7 (1995) (statements that an

8   actress "was broke and was supporting herself by making and selling pullover sweaters, had to sell

9   her house and spends her time hanging out in sleazy bars" were defamatory on their face.).[9]

10   Furthermore, as explained in Section III.D.3 below, the Posts in fact injured Mr. Kwon.

### d.   Mr. Kwon Is Not A Public Figure And He Does Not Need To Allege Actual Malice

13   Teamblind claims that Mr. Kwon is a "public figure" and so "the speech would be afforded

14   enhanced protection under the First Amendment." (Mot. at 17, n. 39.) Presumably, Teamblind

15   means that the standard articulated in *New York Times Co. v. Sullivan* would apply and so

16   Applicants would have to establish that the statements were made with "actual malice" (meaning

17   with knowledge of falsity or reckless disregard for the truth). Not so. Mr. Kwon is not a public

18   figure for First Amendment purposes, and in particular not with respect to statements about his

19   alleged private life.

20   There are two types of public figures, "all-purpose" (or "general purpose") public figures

21   and "limited-purpose" public figures. All-purpose or general purpose public figures are persons

---

[9]  The fact that the Posts do not refer to Mr. Kwon by name does not alter the fact that they are defamatory *per se*. "[T]he fact that the appellant is not named in the defamatory statement does not preclude words clearly conveying a meaning … from being actionable per se." *Washer v. Bank of Am. Nat'l Tr. & Sav. Asso*., 21 Cal.2d 822, 829 (1943), disapproved on other grounds by *MacLeod v. Tribune Publishing Co*., 52 Cal.2d 536, 343 P.2d 36 (1959); 4 California Torts § 45.02 (Matthew Bender, 2021) (same); *Smith v. Airborne Freight Co*., No. C-95-1299 SI, 1996 U.S. Dist. LEXIS 5607, at *11 (N.D. Cal. Apr. 18, 1996) ("'If extrinsic proof is required to establish that a communication not specifically referring to the plaintiff was reasonably understood by recipients to refer to him or her, such evidence will be received by the court; ***it has no effect on whether special damages need be proved, i.e., whether the communication is libelous or slanderous per se***.'" (citation omitted, emphasis added)).

who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," *Gertz,* 418 U.S. at 345, and "by reason of their fame, shape events in areas of concern to society at large." *Id.* at 337. However, the Court cautioned: "(a)bsent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Id.* at 352. Rather, "[a] person becomes a general purpose public figure only if he or she is a well-known celebrity, his name a household word." *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) (internal quotations and citation omitted).

By contrast, to determine whether a person is a limited-purpose public figure, the Court must consider "the nature and extent of an individual's participation ***in the particular controversy giving rise to the defamation***." *Gertz,* 418 U.S. at 352 (emphasis added). Limited-purpose public figures "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* at 345. A limited purpose public figure is only a public figure "on a limited range of issues." *Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1577 (2005). A person is a limited purpose public figure where the following factors are present:

> First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Ampex*, 128 Cal.App.4th at 1577; *Tavoulareas*, 817 F.2d at 772-73.

Nothing suggests that Mr. Kwon has achieved such celebrity that he is a household name. *Tavoulareas*, 817 F.2d at 772 (explaining that the standard for a general purpose public figure is applied strictly and holding the head of Mobil Corporation was not a general purpose public figure). Thus, Mr. Kwon is not an general purpose public figure. *Id*.

Mr. Kwon is not a limited-purpose public figure with respect to his alleged personal relationships. Mr. Kwon did not thrust himself into any debate about his private life or otherwise make his private life the subject of any controversy. *Ampex*, 128 Cal.App.4th at 1577. Furthermore, the issue of whether Mr. Kwan was physically intimate with the woman in the Photo

1   has no impact on anyone other than those immediately involved; it is not an issue that was debated

2   publicly and had "foreseeable and substantial ramifications for nonparticipants." *Id*. Thus, he is

3   not a limited-purpose public figure with respect to the defamatory statements at issue.

4          Accordingly, the actual malice standard of *New York Times v. Sullivan* does not apply and

5   it would be improper to require Applicants to establish knowledge of falsity or reckless disregard

6   for the truth.[10]

7
8          ### 3.       Applicants' Evidence Shows Mr. Kwon Suffered Actual Injury; The Posts Injured Mr. Kwon's Reputation And Caused Him Great Distress

9          It is difficult to dispute that Mr. Kwon suffered real harm and actual injury as a result of

10  the Photo and the Posts.[11] In fact, Teamblind acknowledges as much in its motion. Despite claims

11  that "Woori Bank itself cannot sufficiently allege any particularized harm," there is no mention of

12  the harm suffered by Mr. Kwon. (Mot. at 16:12-15.) Teamblind does not dispute that Mr. Kwon

13  did not suffer real harm.

14         As stated in his declaration, Mr. Kwon suffered significant mental distress and reputational

15  harm.  Elected as Representative Director of the Bank in 2020 (and again re-elected in 2021 for

16  another term), Mr. Kwon's work responsibilities include leading the organization and its

17  employees, and representing the Bank to its customers. (Kwon Decl., ¶ 4.) His reputation is very

18  important to him, and he seeks to maintain the respect of everyone with whom he interacts, and

19  everyone he leads. (*Id*.) The Photo and the Posts that falsely accuse him of being the man in the

20

21  [10]  In any event, Teamblind cites no authority that an applicant seeking to discover the identity of
22  the anonymous person must also allege that the anonymous individual made the statements with
     actual malice. This would set an impossible standard, since actual malice is a subjective standard
23  and it is not possible to allege the Doe's state of mind—*i.e.,* whether the Doe had *knowledge* of
     falsity or *reckless disregard* for the truth—without knowing who the Doe is. Nothing in the
24  caselaw suggests that courts apply an impossible standard, and in fact the opposite is the case. *See,*
     *e.g., Yelp Inc. v. Superior Court*, 17 Cal.App.5th 1, 19 (2017) ("a plaintiff seeking to unmask an
25  anonymous Internet commenter cannot be faulted for the inability to provide evidence of facts that
26  can only be known after the anonymous commenter has been identified").

27  [11]  In defamation cases, "actual injury is not limited to out-of-pocket loss. Indeed, the more
     customary types of actual harm inflicted by defamatory falsehood include impairment of
28  reputation and standing in the community, personal humiliation, and mental anguish and
     suffering." *Gertz*, 418 U.S. at 350.

Photo having an intimate physical encounter with a much younger woman who is not his wife
caused Mr. Kwon severe harm by exposing him to ridicule and derision, harming his standing in
the Bank's community, and diminishing the respect of his co-workers. As a result of the false and
misleading Posts, many of Woori Bank's employees have incorrectly assumed Mr. Kwon is the
individual in the Photo. (*Id.*, ¶ 13) Some Woori Bank employees replied and commented to the
Photo. Some of those comments stated that they were disappointed in Mr. Kwon, were shocked,
and told Mr. Kwon to get his act together. (*Id.*) In other comments, they stated that they believed
that the Photo was a real Photo of Mr. Kwon. (*Id.*) Several Woori Bank employees asked Mr.
Kwon directly if he is the individual in the Photo. (*Id.*) Others unaffiliated with the Bank have
learned of the posts and Photo through word-of-mouth, or subsequent press coverage, and they,
too, have assumed Mr. Kwon is the individual in the Photo and asked him if he is that man. (*Id.*)
After the Posts were uploaded, rumors regarding Mr. Kwon circulated based on the details of the
Posts. (Supp. Kim Decl., ¶ 11.) Bank employees overheard other employees saying that they were
greatly disappointed by what Mr. Kwon did, with some showing disillusionment toward Mr.
Kwon. (*Id.*) Mr. Kwon has heard that some employees and colleagues have said that they lost
respect for him because they view him as the kind of man who commits personal indiscretions
with a much younger woman during times like these. (Kwon Decl., ¶ 13.) Such interactions and
the knowledge that as a result of the Posts, others view Mr. Kwon this way have caused Mr. Kwon
great mental anguish and have severely affected his well-being. (*Id.*) In addition, he has had
difficulty in interacting and communicating with Woori Bank employees, engaging in external PR
and marketing events, and even doing simple things, such as shaking hands, taking photographs
etc. due to his concern that such interactions could be misinterpreted, or that these interactions
might cause people to remember the Photo and the Posts and react negatively to him. (*Id.*) This
damage was increased by the fact that the Photo was repeatedly re-posted, on the app and in news
media, repeatedly subjecting Mr. Kwon to false accusations about his alleged personal
indiscretions transmitted to a wide audience of his co-workers and the public. (*Id.*)

As Representative Director of the Bank, Mr. Kwon's work responsibilities include
representing the Bank to its customers, and leading the Bank and its employees. (Kwon Decl., ¶

14.) These false accusations have tarnished Mr. Kwon's image at the Bank and have impacted his

ability to carry out these work responsibilities. (*Id*.) The incident has also tarnished the Bank's

reputation. (*Id*.; Supp. Kim Decl., ¶ 12.) Given that the above issue was triggered by repeated

anonymous posts, it is difficult for Mr. Kwon to officially respond, and it is almost impossible to

restore his honor and reputation. (Kwon Decl., ¶ 14.)

The Posts and the false accusations have also affected Mr. Kwon's personal life. (Kwon

Decl., ¶ 15.) The false accusations have strained his relationship with his family, as he had to

explain to them that the man in the Photo was not him (and the accusations in the Posts were

false), and has caused Mr. Kwon severe emotional distress. (*Id*.)

### 4.    Balancing Weighs In Favor Of Ordering The Discovery

Any balancing test weighs in favor of permitting the discovery here. Quite simply, "[t]here

is no compelling public interest in protecting anonymous speech of this character." *Fodor v. Doe*,

No. 3:10-CV-0798-RCJ (VPC), 2011 U.S. Dist. LEXIS 49672, at *12-13 (D. Nev. Apr. 27, 2011).

Rather, the speech at issue here is false, defamatory on its face, and caused Mr. Kwon deep

distress and harm. Indeed, the Posts constitute workplace harassment. One or more of Mr. Kwon's

co-workers *repeatedly and falsely* insisted the Photo showed his personal, intimate relationship,

outside of work, with a much younger (unknown) woman, and sought to shame and humiliate him

to all of his other co-workers for his alleged personal relationship. And Teamblind has refused to

do anything to prevent the repeated reposting and dissemination of the defamatory statements and

Photo. (Kwon Decl., ¶ 13.)

Mr. Kwon, just like all other individuals and employees, deserves to be able to seek

protection from this type of defamation. (*See* Section III.A, *supra*; *Gertz*, 418 U.S. at 341 ("[T]he

individual's right to the protection of his own good name 'reflects no more than our basic concept

of the essential dignity and worth of every human being . . .'") By contrast, there is no social value

in allowing Teamblind to provide ***complete impunity*** (through continued anonymity) for the

person(s) who engaged in the defamation. (*Id*.) Rather, in the U.S. as in other countries,

individuals receive protection but ***also know that they are responsible when their speech is false***

***and defamatory***. For example, the California Constitution specifically provides that *every* person

1  must be responsible for their abuse of the right of free speech. Cal. Const., art. I, § 2, subd. (a)

2  ("Every person may freely speak, write and publish his or her sentiments on all subjects, *being*

3  *responsible for the abuse of this right*.") (emphasis added); *see also, e.g., Dun & Bradstreet, Inc.*

4  *v. Greenmoss Builders*, 472 U.S. 749, 764 (1985), conc. opn. of Burger, C. J. ("The great rights

5  guaranteed by the First Amendment carry with them certain responsibilities as well.") Thus,

6  where, as here, the statements at issue are clearly defamatory and injurious, the balance tips in

7  favor of disclosure. *In re Yuichiro Yasuda II*, 2020 U.S. Dist. LEXIS 26242, *17-18 (where

8  statements were found to be defamatory under Japanese law, applicants had "shown that the

9  anonymous defendant engaged in wrongful conduct and a 'real evidentiary basis' that the tweets

10 caused real harm" and any First Amendment balancing test was necessarily satisfied.); *In re

11 Jommi*, 2013 U.S. Dist. LEXIS 163201, * 11 (ordering disclosure of information to identify

12 anonymous speaker for use in foreign criminal defamation case); *cf. Wilens v. Automattic Inc*., No.

13 3:14-cv-02419-LB, 2015 U.S. Dist. LEXIS 88781 (N.D. Cal. Apr. 28, 2015), adopted Sept. 18,

14 2015 (finding *Highfields* balancing test sufficiently met to enter default judgment on defamation

15 claims against anonymous internet user where statements were defamatory per se).

16        Furthermore, Teamblind is not entitled to be treated differently from any other platform, or

17 shielded from complying with Applicants' subpoena because it claims there is value in its

18 anonymous platform.[12] *See, e.g., United States v. Glassdoor, Inc. (In re Grand Jury Subpoena)*,

19

---

20 [12] Notably, *Glassdoor, Inc. v. Superior Court*, 9 Cal.App.5th 623 (2017), on which Teamblind
21 relies (Mot. at 19:10-22), did not treat Glassdoor any differently than any other platform, or deny
   the discovery request because of Glassdoor's purported interest in preserving the anonymity of its
22 users. Rather, the court applied the California state court standard for unmasking anonymous
   speakers, a standard that is lower than the standard set forth in *Highfields* because it does not
23 involve the final balancing step. *See id.* at 634-35 (applying the test outlined in *Krinsky v. Doe 6*);
   *Krinsky v. Doe 6*, 159 Cal.App.4th 1154, 1172 (2008) ("When there is a factual and legal basis for
24 believing libel may have occurred, the writer's message will not be protected by the First
   Amendment. Accordingly, a further balancing of interests should not be necessary to overcome
25 the defendant's constitutional right to speak anonymously."); *Yelp Inc*., 17 Cal.App.5th at 15 ("'a
   further balancing should not be required '[w]here it is clear to the court that discovery of the
26 defendant's identity is necessary to pursue the plaintiff's claim,' and the plaintiff makes a prima
   facie showing that a libelous statement has been made.'") (citation and emphasis omitted). The
27 court in *Glassdoor v. Superior Court* denied the discovery because the plaintiff had "failed to
   make a prima facie showing that anything in Doe's review disclosed confidential information."
28 *Glassdoor v. Superior Court*, 9 Cal.App.5th at 647.

1   875 F.3d 1179, 1186 (9th Cir. 2017) (rejecting Glassdoor's claim that because "[a]nonymity is an

2   essential feature of the Glassdoor community," Glassdoor or its users should receive greater

3   protections with respect to grand jury subpoenas than others). As noted, Teamblind has done

4   nothing to prevent repeated reposting and dissemination of the defamatory claims and Photo, and

5   instead enabled the user(s) to repeatedly and falsely attack Mr. Kwon. (Kwon Decl., ¶ 13.) And, as

6   in *United States v. Glassdoor*, Teamblind puts its users on notice that it might, in fact, reveal

7   whatever information it has about them in response to legal requests. (*See* Supp. Kim Decl., Ex. U

8   [Blind privacy policy] at section 4 [explaining that "[w]e may access, preserve and share part of

9   such [user] information in response to a legal request if we have a good faith belief that the law

10  requires us to do so."]) "The fact that Glassdoor's users do not have a reasonable expectation of

11  **complete** privacy further undermines Glassdoor's contention that enforcing the subpoena would

12  violate its users' rights to anonymous speech or association." *United States v. Glassdoor*, 875 F.3d

13  at 1187 (emphasis added).[13]

14  **E.      Teamblind's Other Contentions Are Irrelevant**

15          Teamblind claims without any explanation that the Subpoena "implicates" "confidential

16  and proprietary technology of Teamblind." (Mot. at 20:8-14; ECF 9-3 [Moon Decl.], ¶ 20:8-14.)

17  This assertion is unsupported by any facts or explanation for how the subpoena allegedly

18  "implicates" any of Teamblind's trade secrets, or even what it means to "implicate" Teamblind's

19  trade secrets. Teamblind's assertion is irrelevant.

20          Furthermore, it is irrelevant whether Teamblind cannot produce some particular pieces of

21  identifying information. For example, if Teamblind has an email address or email addresses in its

22  possession, custody or control that can be retrieved or that can be associated with the account(s) or

23  user(s) who made the Posts, Teamblind must produce the email address(es). But even if

24  Teamblind does not have such information, Teamblind should still produce **whatever information**

25  **covered by the subpoena that it has** in is possession custody or control. (*See* Section III.C *supra*

26

27  _____

    [13]  Teamblind provides no authority suggesting that the criminal complaint against Mr. Moon in
28  Korea, *based on Mr. Moon's actions in Korea*, could impact the balancing test, or that it relates in
    any way to Applicant's right to learn the identities of the anonymous user(s) who made the Posts.

1  providing examples of how different pieces of information could be used to identify the

2  individuals who made the Posts.)

3  **IV.     CONCLUSION**

4      For the foregoing reasons, the Court should order Teamblind to comply with Applicants'

5  subpoena.

6  Dated:  September 3, 2021            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

7                                      By     _____/s/ Kent R. Raygor_____

8                                          KENT R. RAYGOR
                                        ***Attorneys for Applicants Woori Bank and***
9                                       ***Kwang Seok Kwon***

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28