1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    MICHAEL K. JOHNSON, SB#130193
2      Email: Michael.Johnson@lewisbrisbois.com
    2185 N. California Blvd., Suite 300
3  Walnut Creek, CA 94596
    Telephone: 925.357.3456
4  Facsimile:  925.478.3260

5  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    JUSTIN S. KIM, SB#255980
6      Email: Justin.Kim@lewisbrisbois.com
    650 Town Center Drive, Suite 1400
7  Costa Mesa, California 92626
    Telephone: 714.668.5548
8  Facsimile:  714.850.1030

9  Attorneys for Subpoena Respondent,
    TEAMBLIND INC.

10
                    UNITED STATES DISTRICT COURT
11
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
12                         OAKLAND DIVISION

13

14  IN RE EX PARTE APPLICATION OF       CASE NO.  4:21-mc-80084-DMR
    WOORI BANK AND KWANG SEOK           The Hon. Magistrate Judge Donna M. Ryu
15  KWON
                                        **SUBPOENA RESPONDENT**
16                                      **TEAMBLIND INC.'S REPLY IN**
                                        **SUPPORT OF MOTION TO VACATE**
17                                      **ORDER ON EX PARTE**
                                        **APPLICATION AND QUASH**
18                                      **SUBPOENA OF WOORI BANK AND**
                                        **KWANG SEOK KWON**
19
20                                      **Date:    October 14, 2021**
                                        **Time:    1:00 p.m.**
21                                      **Courtroom 4, 3rd Floor**

22                                      *[Filed and Served Concurrently with*
23                                      *Supplemental Declaration of Sunguk Moon]*

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

# TABLE OF CONTENTS

2

3

TABLE OF CONTENTS ............................................................................................................ ii

I.     REPLY ............................................................................................................ 1

II.    APPLICANTS MISREPRESENT TEAMBLIND'S OPERATIONS ................................. 3

    A.    Applicants' References to Unsubstantiated News Stories ......................................... 3

    B.    TeamBlind Did Not Refuse to Comply with Korean Authorities ............................. 5

    C.    TeamBlind Cannot Serve a Subpoena on the Unidentified Poster(s) ...................... 6

III.   APPLICANTS INCORRECTLY CLASSIFY THE SUBJECT POST AS DEFAMATION PER SE ................................................................................ 7

    A.    The Allegedly Offensive Post Must be Evaluated in Its Entirety, Not  Only through Reference to the Photograph and Select Statements ................................. 7

    B.    The *Columbia Insurance* Factors Do Not Apply in This Case Because TeamBlind Disputes the Subpoena on Free Speech Grounds ............................. 10

    C.    Under *Highfields*, Applicants Do Not Meet the Two-Pronged Test and  the Court Should Quash the Subpoena ............................................................. 11

        1.    First Amendment Rights of Anonymous Speech Prohibit Production of Any Information by TeamBlind ............................. 11

        2.    Mr. Kwon is, at a Minimum, a Limited Purpose Public Figure ................. 12

        3.    The Balance of Harms Under *Highfields* Weigh in Favor of Vacating the Order and Quashing the Subpoena ......................... 13

    D.    TeamBlind Maintains Its Remaining Objections to the Subpoena ........................ 15

IV.   CONCLUSION ............................................................................................. 15

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

*Art of Living Found. v. Does,*
    Case no. 10-CV-05022-LHK, 2011 U.S. Dist. LEXIS 63507, 2011 WL
    2441898 (N.D. Cal. June 15, 2011) ................................................................. 9

*Awtry v. Glassdoor, Inc.,*
    Case no. 16-mc-80028-JCS, 2016 U.S. Dist. LEXIS 44804 (N.D. Cal.
    Apr. 1, 2016) ................................................................................................. 11

*Branzburg v. Hayes,*
    408, U.S. 665 (1974) ..................................................................................... 14

*Columbia Insurance v. Seescandy.com,*
    185 F.R.D. 573 (N.D. Cal. 1999) .......................................................... 1, 2, 10

*Desrochers v. City of San Bernardino,*
    572 F.3d 703, 709-710 (9th Cir. 2009) ................................................... 12, 13

*Fair Hous. Council v. Roommates.com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) ......................................................................... 4

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ....................................................................................... 12

*Gonzalez v. Google, Inc.,*
    335 F. Supp. 3d 1156 (N.D. Cal. 2018) ........................................................... 4

*Gonzalez v. Google, Inc.,*
    2021 U.S. App. LEXIS 18515 (9th Cir. June 22, 2021) ................................... 4

*Global Telemedia Int'l., Inc. v. Doe 1,*
    132 F. Supp. 2d 1261 (C.D. Cal. 2001). ....................................................... 10

*Greenbelt Coop. Publ'g Ass'n v. Bresler,*
    398 U.S. 6 (1970) ............................................................................................ 9

*Highfields Capital Mgmt., L.P. v. Doe*,
    385 F. Supp. 2d 969 (N.D. Cal. 2005) ..........................................2, 11 13-15

*Hosszu v. Barrett,*
    716 Fed. Appx. 622 (9th Cir. 2017) ................................................................ 9

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4850-5549-8236.1                            iii                            4:21-mc-80084-DMR
                        TABLE OF CONTENTS / TABLE OF AUTHORITIES

*Hyland v. Wonder*
   972 F.2d 1129 (9th Cir. 1992) ........................................................................ 13

*In re DMCA Subpoena to Reddit, Inc.,*
   383 F. Supp. 3d 900 (N.D. Cal. 2019) ........................................................... 11

*In re Ex Parte App. of Jommi,*
   Case no. C 13-80212, 2013 U.S. Dist. LEXIS 163201, 2013 WL 6058201
   (N.D. Cal. Nov. 15, 2013) ........................................................................ 2, 10

*In re Hedrick House Ltd.,*
   Case no. SA MC 20-00005-DOC, 2020 U.S. Dist. LEXIS 127472, 2020
   WL 3965999 (C.D. Cal. Mar. 31, 2020) ....................................................... 14

*In re Komanokai,,*
   Case no. 20-mc-80149-KAW, 2020 WL 6684565 (N.D. Cal. Nov. 12,
   2020) ................................................................................................................ 14

*In re Order Requiring Apple, Inc. to Assist in the Execution of a Search
Warrant Issued by this Court,*
   149 F. Supp. 3d 341 (E.D.N.Y. Feb. 29, 2016) .............................................. 6

*In re PGS Home,*
   Case no. 19-mc-80139 JCS, 2019 U.S. Dist. LEXIS 204520, 2019 WL
   6311407 (N.D. Cal. Nov. 25, 2019) ....................................................... 14, 15

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,*
   634 F.3d 557 (9th Cir. 2011) ......................................................................... 14

*In the Matter of the Search of an Apple Iphone Seized During the Execution
of a Search Warrant on a Black Lexus IS300, California License Plate
35KGD203,*
   Case no. 16-cm-00010, Docket no. 16 (C.D. Cal. Feb. 25, 2016) ................. 6

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005) .................................................................. 7, 12

*Music Group Macao Commercial Offshore Ltd. v. Does,*
   82 F. Supp. 3d 979 (N.D. Cal. 2015) ........................................................... 10

*Nicosia v. De Rooy,*
   72 F. Supp. 2d 1093 (N.D. Cal. 1999) ........................................................... 9

*Obsidian Fin. Grp., LLC v. Cox,*
   812 F. Supp. 2d, 1220 (D. Or. 2011) ............................................................. 9

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,*
    418 U.S. 264 (1974) .................................................................................... 9

*Rocker Mgmt. LLC v. John Does*,
    Case No. MISC. 03-003 3 CRB, 2003 U.S. Dist. LEXIS 16277 (N.D.
    Cal. May 29, 2003)................................................................................... 10

*United States v. Glassdoor, Inc. (In re Grand Jury Subpoena)*
    875 F.3d 1179 (9th Cir. 2017) ................................................................ 14

**California Cases**

*Ampex Corp. v. Cargle,*
    128 Cal. App. 4th 1569 (2005) ................................................................ 13

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006)  ............................................................................... 4


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# I.      REPLY

Woori Bank and Kwang Seok Kwon's Opposition fails to establish that Applicants are entitled to any potential identifying information related to the anonymous poster(s). Therefore, the Court should grant TeamBlind's Motion to vacate the June 28, 2021 Order and quash the associated subpoena.

Applicants' reference to the photograph and select statements in the subject post as the basis for their defamation claim ignores both the context and the entirety of the post, which the Court must evaluate in determining whether the statements are protected anonymous speech under the First Amendment.  The Opposition disregards that the tone and nature of the post as a whole is highly critical of the working environment and working conditions and is apparently directed to leadership of Woori Bank.  Review of the post in its entirety readily demonstrates that any rational viewer would interpret the statements as rants from an obviously disgruntled employee, using figurative and hyperbolic language.  While the leadership of Woori Bank may be incensed by the criticism set forth in the post, Courts have found that these types of statements are not actionable.  Applicants acknowledge that the statements are "so outlandish that no rational person could believe them to be purported statements of fact," and viewing the post as a whole, the photograph cannot form the basis for the defamation claim, as any statements pertaining to the photograph are not credible. (Opposition, pg. 2:20-21).

Applicants do not dispute that Woori Bank, whose business and operations are identical to Woori Financial Group, Inc., is one of the most powerful institutions in Korea.[1] Nor do Applicants dispute Woori Bank's substantial and historically established connection with the Korean government which renders it a government actor.

While Applicants request that the Court evaluate this Motion under *Columbia*

---

[1] Declaration of Justin S. Kim, Docket no. 9-1, ¶2a; Exhibit 1, Woori Financial Group, Inc. April 21, 2021 Annual Report, pg. 1, Woori Financial Group, Inc.'s "overall business and operations after the stock transfer, on a consolidated basis, <u>are identical</u> to those of Woori Bank on a consolidated basis immediately prior to the stock transfer."


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON
EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

1  *Insurance v. Seescandy.com*, 185 F.R.D. 573, 578-580 (N.D. Cal. 1999) and *In re Ex Parte*

2  *Application of Jommi*, 2013 U.S. Dist. LEXIS 163201, 2013 WL 6058201 at *4 (N.D. Cal.

3  Nov. 15, 2013), *Jommi* did not involve a First Amendment challenge by the third party to

4  the subpoena, as it was an unopposed ex parte application and as such, does not provide

5  any guidance for the Court in this case.

6       As explained in TeamBlind's Motion, the Court should evaluate this case under the

7  two pronged test set forth in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969,

8  975-976 (N.D. Cal. 2005), again, based on the subject matter of the post, which pertains to

9  criticism of Woori Bank, its leadership and the working conditions at same, clearly an

10  issue of public concern.

11       Even assuming that Applicants can satisfy the first prong under *Highfields* which

12  requires Applicants to set forth a prima case, in light of the magnitude of competing harms,

13  the Court should find that second *Highfields* prong weighs in favor of quashing the

14  subpoena. While Mr. Kwon states that he experienced distress and shame as a result of the

15  post, he continues to maintain his position as the representative director, or CEO, of Woori

16  Bank, one of the most powerful institutional entities in Korea. Applicants do not deny

17  their previously confirmed intentions to locate the residence of the Woori Bank employee

18  or employees who engaged in the speech and criminally prosecute them.[2] Applicants

19  apparently intend to punish those who engage in critical speech, and further, deter their

20  own employees from engaging in any criticism of the company in the future. Applicants'

21  campaign should not be supported. In this case, balancing the harms under the second

22  prong of *Highfields* weigh in favor of vacating the June 28, 2021 order, as any actual or

23  perceived compromise of user data on the part of TeamBlind will be severely detrimental

24  to Blind's community, as it will result in a loss of user trust and prevent or dissuade users

25  from speaking out about critical employment related issues on Blind.

26  _____

27  [2] Docket no. 9-2: Declaration of Kyunghwan Kim, ¶2, pg. 2:7-17.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4850-5549-8236.1       2       4:21-mc-80084-DMR

SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON
EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

1   The Opposition also mistakenly states that TeamBlind encourages and allows the

2   dissemination of offensive speech on its platform and misrepresents online stories

3   pertaining to TeamBlind.  Applicants also claim that TeamBlind refuses to cooperate with

4   authorities and that TeamBlind failed to comply with this Court's Order to serve

5   Applicants' subpoena on the users associated with the identified screen names.  As

6   explained herein, Applicants' contentions are completely without merit.

7   Finally, TeamBlind maintains its objections to the subpoena on the grounds that it

8   seeks confidential and proprietary information pertaining to its platform in light of the

9   overbroad requests set forth in the subpoena.

10  **II.       APPLICANTS MISREPRESENT TEAMBLIND'S OPERATIONS**

11  **A.       Applicants' References to Unsubstantiated News Stories**

12  In an attempt to discredit TeamBlind, Applicants reference translations of various

13  unsubstantiated stories from Korean websites to develop a false narrative that TeamBlind

14  allows or encourages the dissemination of inaccurate information, defamation and

15  harassing speech.  In connection with this mischaracterization, Applicants attach online

16  stories regarding instances wherein third parties or users disputed or complained of various

17  content that was posted on Blind.[3]  One story discusses instances of cyberbullying across

18  various social media platforms in Korea generally.[4]  Applicants further misrepresent a

19  story regarding a suicide note posted by a Blind user, claiming that "TeamBlind refused to

20  provide any information to help avert the employee's suicide," when the story clearly

21  states that, in response to the inquiry for specific identifying information such as name,

22  address, resident registration number and phone number, TeamBlind did not possess any of

23  the requested information and as such, was unable to provide any information, despite its

24

25  _____

26  [3] Supplemental Declaration of Jae Ho Kim, Exhibits Q, R, T, Docket no. 12-3, pgs. 1-11, 20-25 of 36.

27  [4] Supplemental Declaration of Jae Ho Kim, Exhibit S, Docket no. 12-3, pgs. 12-18 of 36.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  desire to do so.[5]  (Opposition, pg. 3:21-22).  Applicants suggest that, due to the lack of

2  identifying information from TeamBlind, the poster committed suicide, when the story

3  plainly states that no such tragedy occurred.[6]

4        As with other social media related entities, TeamBlind encounters situations in

5  Korea when third parties or users dispute statements posted online and controversy

6  inevitably arises as a result of user generated content.[7]  Applicants do not address that

7  TeamBlind implements a post monitoring system and also employs teams of content

8  moderators who identify and remove potentially objectionable content.[8]  Out of hundreds

9  of online stories in Korea discussing the Blind app, which highlight the utility of the

10  communication medium and its effect on improving the Korean workplace, Applicants'

11  referenced stories are unrepresentative of the aggregate positive social impact of the Blind

12  app.  For example, on June 22, 2021, Reuters reported how, in Korea, Blind "is helping

13  change management attitudes towards workers in some of the nation's biggest companies,"

14  explaining that "[t]he app, launched in 2013, reached a new level of influence after the

15  coronavirus pandemic prompted employees to seek online routes to remain in the loop and

16  corporate executives began paying closer attention."[9]  The story followed Reuters' 2018

17

18  [5] Supplemental Declaration of Jae Ho Kim, Exhibit U, Docket no. 12-3, pgs. 26-32 of 36.

19  [6] The story states "Fortunately, there was no tragic incident, but Company A experienced a lot of
20  confusion…"  Supplemental Declaration of Jae Ho Kim, Exhibit U, Docket no. 12-3, pg. 30 of 36;
   Supplemental Declaration of Sunguk Moon, ¶2.

21  [7] This Court is well aware of the types of claims brought against social media platforms for third
   party content.  See e.g., *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156 (N.D. Cal. August 15,
22  2018) (aff'd at *Gonzalez v. Google LLC*, 2021 U.S. App. LEXIS 18515 (9th Cir. June 22, 2021).
   Indeed, the Ninth Circuit recognizes the challenges faced by online platforms in acknowledging
23  that "Websites are complicated enterprises" and should not have to "face death by ten thousand
   duck-bites, fighting off claims that they promoted or encouraged--or at least tacitly assented to--
24  the illegality of third parties."  *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174
   (9th Cir. 2008).  The California Supreme Court also recognizes this dynamic, holding that
25  "Notice-based liability for service providers would allow complaining parties to impose
   substantial burdens on the freedom of Internet speech by lodging complaints whenever they were
26  displeased by an online posting."  *Barrett v. Rosenthal*, 40 Cal. 4th 33, 57 (2006).

27  [8] Supplemental Declaration of Sunguk Moon, ¶3.

   [9] Lee, Joyce & Yang, Heekyong, *Messaging app helps take off blinders at top-down South Korean*
28  (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  reporting that Blind "is belatedly stirring the country's #MeToo movement, shedding new

2  light on sexual harassment in the heavily male-dominated corporate culture."[10]

3  TeamBlind's CEO, Mr. Moon discussed these perceptions of gender inequality among

4  Korean workers at the United Nations Global Compact summit in September, 2020.[11]

5  During the pandemic, Blind has further been utilized for a variety of purposes in Korea,

6  such as compiling statistics on workplace sentiment regarding COVID vaccination rates.[12]

7  In sum, Applicants' misrepresent Blind and they cannot dispute the social utility it

8  provides to job seekers and employees of every level in all sectors of the Korean economy.

9      **B.      TeamBlind Did Not Refuse to Comply with Korean Authorities**

10         Applicants omit in their original subpoena application as well as in their Opposition

11  to the instant Motion, the fact that, on the same day that the subject post was uploaded,

12  TeamBlind utilized its discretion (as it retains the right to do per its Terms of Service) and

13  the subject post was deleted approximately 1 hour after it was posted.  Additionally, the

14  subsequent re-posts on February 26, 2021 were also removed from the Woori Bank

15  channel within approximately 40 minutes of being posted.[13]

16         Applicants mistakenly claim that TeamBlind refuses to comply with government

17  authorities in Korea and refuses to provide information.  On July 8, 2021, TeamBlind's

18  CEO spent four hours speaking with representatives of the Namdaemun District police

19  station in Seoul, discussing the app and its anonymity features, in response to the

20

21  _____

22  *chaebol culture* (https://www.reuters.com/technology/messaging-app-helps-take-off-blinders-top-down-south-korean-chaebol-culture-2021-06-22/), Supplemental Declaration of Sunguk Moon, ¶
23  4, Exhibit 1.

24  [10] Yang, Heekyong, *South Korean chat app becomes new outlet for #MeToo movement*
    (https://www.reuters.com/article/us-southkorea-metoo-app/south-korean-chat-app-becomes-new-outlet-for-metoo-movement-idUSKCN1G60IM), Supplemental Declaration of Sunguk Moon, ¶ 5,
25  Exhibit 2.

26  [11] Supplemental Declaration of Sunguk Moon, ¶ 5, Exhibit 3.

    [12] Supplemental Declaration of Sunguk Moon, ¶ 5, Exhibit 4.

27  [13] Supplemental Declaration of Sunguk Moon, ¶ 6.

28

SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON
EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  inquiries.[14] TeamBlind continues to interact with the Namdeamun police station with

2  regard to this matter in Korea.[15]

3  　　　　To the extent that Applicants suggest that TeamBlind's objection to the instant

4  subpoena is in itself wrongful, TeamBlind responds that it cannot be faulted for vigorously

5  upholding the rights of personal privacy in our digital era.  This is not a new phenomenon.

6  The balancing of digital privacy with the necessity for information has arisen in a myriad

7  of situations, including federal requests for assistance in criminal matters involving

8  domestic terrorism and national security.[16]  Applicants' attempt to misrepresent

9  TeamBlind as "encouraging" the dissemination of offensive speech is wholly unfounded.

10  　　　　**C.**　　　**TeamBlind Cannot Serve a Subpoena on the Unidentified Poster(s)**

11  　　　　Applicants claim that TeamBlind is in violation of this Court's June 28, 2021 Order

12  which required TeamBlind to serve a copy of the Order and subpoena to each individual

13  associated with the three usernames identified by Applicants.[17]  As set forth in the

14  Supplemental Declaration of Sunguk Moon, TeamBlind cannot directly communicate with

15  each of the usernames to serve a copy of the Court's June 28, 2021 Order and the

16  subpoena.  As the Blind system is designed, there is no "direct messaging" feature that

17  could be utilized in this case through the Application.  TeamBlind does not retain email

18  addresses, or possess any records of physical addresses where it could effectuate service of

19  the Order and the subpoena.  Applicants' claim that TeamBlind refused to comply with

20

21  [14] Supplemental Declaration of Sunguk Moon, ¶ 7.

　　[15] Supplemental Declaration of Sunguk Moon, ¶ 7.

22  [16] *See* "Apple Inc.'s Motion to Vacate Order Compelling Apple Inc. to Assist Agents in Search,

23  and Opposition to Government's Motion to Compel Assistance," *In the Matter of the Search of an Apple Iphone Seized During the Execution of a Search Warrant on a Black Lexus IS300,*

24  *California License Plate 35KGD203,* Case no. 16-cm-00010, Docket no. 16 (C.D. Cal. Feb. 25, 2016).  See also *In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant*

25  *Issued by this Court,* 149 F. Supp. 3d 341, 374 (E.D.N.Y, Feb. 29, 2016) (the Court explained the balancing of personal interests of maintaining user privacy and commercial interests in conducting

26  a lawful business with the government's national security interests, in denying the United States' motion to compel Apple to assist in execution of a search warrant to bypass security on an

27  Iphone).
　　[17] June 28, 2021 Order, Docket no. 5, pg. 6:28-7:4.

28



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON
EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

1  this Court's June 28, 2021 Order is false.[18]

2  **III.    APPLICANTS INCORRECTLY CLASSIFY THE SUBJECT POST AS DEFAMATION PER SE**

3

4        **A.      The Allegedly Offensive Post Must be Evaluated in Its Entirety, Not Only through Reference to the Photograph and Select Statements**

5        In support of their position that the anonymous poster's statement was defamatory,

6  Applicants' Opposition focuses solely on the photograph and select statements in the post

7  for the proposition that the statements are defamation per se.  Applicants' argument is

8  belied by their admission that the statements are "so outlandish that no rational person

9  could believe them to be purported statements of fact."  Applicants' argument is incorrect

10  because they ignore the rule that when determining whether a statement can reasonably be

11  interpreted as a factual assertion, the Court must examine the "totality of the circumstances

12  in which it was made."  *Knievel v. ESPN*, 393 F.3d 1068, 1074-1075 (9th Cir. 2005).  In

13  *Knievel*, the Ninth Circuit undertook the following analysis to determine whether

14  statements accompanying a photograph were defamatory:

15        **First, we look at the statement in its broad context, which includes the general tenor of the entire work**, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, **analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience** in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false. [*Id*. at 1075, emphasis added].

16

17

18

19

20  See also Restat 2d of Torts, § 563, comment e ("In determining the meaning of a

21  communication, account is to be taken of all the circumstances under which it is made so

22  far as they were known to the recipient.")  Assuming that the post is directed to Mr. Kwon,

23  read in context, the anonymous poster, apparently a disgruntled employee, makes the

24  following statements, critical of the subject and Woori Bank, throughout the post where

25  the photograph is discussed:

26  _____

27  [18] Supplemental Declaration of Sunguk Moon, ¶ 8.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

– Complaints about monitoring its employees' statements pertaining to the workplace and staffing: "*Woori Bank allegedly operates an online comments monitoring team and a Blind monitoring team – isn't this worse than the online comments monitoring team at the National Intelligence Service? If they have enough personnel to operate such teams, such personnel should be assigned to a branch that is currently extremely busy.*"[19]

– Complaints about economic hardship among employees and customers: "*He did so while both employees and customers are going through such difficult times*"; "*Countless employees who are not even aware of his true identity are sweating at sales sites, working overtime at the head office, and sacrificing themselves for the bank.*"

– Hyperbolic criticism of the bank's management and policies: "*Woori Bank is not your personal property, and employees are not just slaves running around and bowing down when you ask them to do so.  Woori Bank is a magnificent and noble product of tens of thousands of employees. Keep that in mind.*"

– Criticism regarding management and entitlement: "*You got that position without any ability by riding on someone's coattails.  Shouldn't you at least work hard, and work in a right manner?*" ; "*A man who is more suitable as a staff or a secretary got his current position by riding on the coattails of his high school alumnus.*"

– Criticism of the company:  "*Take a closer look at what you have done in one year. There are no achievements.*" ; "*Woori Bank is now ranked 7th or 8th.*"[20]

In this case, the audience, other Woori Bank employees who purportedly viewed the picture in the Woori Bank forum, would possess knowledge regarding their employer and further be informed as to events that they participated in as employees.  The viewer of the

---

[19] Declaration of Jae Ho Kim, Docket no. 1-3, pg. 7 of 18
[20] *Id.* at pg. 7-8 of 18.


SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

1  anonymous speech would have formed his or her own opinion of the truth or veracity of

2  these statements pertaining to Woori Bank's workplace, such as whether they have had to

3  endure excessive overtime hours or "sweating at sales sites," or there was inappropriate

4  allocation of employees.  The anonymous post further references a lack of achievements at

5  Woori Bank and the viewer would have at least minimal knowledge regarding the bank.  In

6  other words, the consumer of the anonymous post "is left 'free to draw his own

7  conclusions.'"  *Hosszu v. Barrett*, 716 Fed. Appx. 622, 624 (9th Cir. 2017).  For example,

8  In referencing the photograph, the poster further sarcastically insinuates "where on earth is

9  this place, and who is this woman in his arms."  As the tone of the statement as a whole, in

10 addition to its parts, diminishes the poster's credibility, any statements pertaining to the

11 photograph cannot be classified as a purported statement of fact.

12       The statements pertaining to Woori Bank also cannot be proven to be true or false

13 in light of its appearance in an anonymous online forum.  While online speech generally

14 "stands on the same footing as other speech, blogs are a subspecies of online speech which

15 inherently suggest that statements made there are not likely provable assertions of fact."

16 *Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d, 1220, 1223-24 (D. Or. August 23, 2011).

17 See also *Art of Living Found. v. Does*, 2011 U.S. Dist. LEXIS 63507, 2011 WL 2441898,

18 at *7 (N.D. Cal. June 15, 2011) (finding readers less likely to view statements on

19 "obviously critical blogs" "as assertions of fact rather than opinion"); *Nicosia v. De Rooy*,

20 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999) (readers less likely to view statements in

21 internet discussion groups as assertions of fact).  Courts have frequently found certain

22 terms suggestive of name calling, exaggeration, ridicule, imaginative expression, or

23 subjective evaluation, and not assertions or implications of provable facts.  *Old Dominion*

24 *Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284-85 (1974)

25 (statement calling plaintiffs "traitors" not libelous when context showed used figuratively);

26 *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (word "blackmail" no more

27 than "rhetorical hyperbole").

28       The post is not defamation per se, as Applicants claim.  The post does not include

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  the any additional statements pertaining to the source of the photograph.  The reasonable

2  viewer of such a post, interpreting the statements in the context of the post as a whole,

3  would interpret the reference to the picture as a criticism of Mr. Kwon and Woori Bank

4  leadership, without addressing whether Mr. Kwon is depicted in the photograph.  In light

5  of the emotionally charged, hyperbolic and exaggerated language throughout the post, the

6  "general tenor of the entire work" readily confirms that the statements are from apparently

7  disgruntled employee.  The post, as a whole, is similar to other message board postings

8  which Courts have found were not actionable defamation.  See, e.g. *Music Group Macao*

9  *Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015); *Rocker*

10  *Mgmt. LLC v. John Does*, Case No. MISC. 03-003 3 CRB, 2003 U.S. Dist. LEXIS 16277

11  (N.D. Cal. May 29, 2003).  *Global Telemedia Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261,

12  1267 (C.D. Cal. 2001).

13  **B.     The *Columbia Insurance* Factors Do Not Apply in This Case Because**
14  **TeamBlind Disputes the Subpoena on Free Speech Grounds**

15         Applicants also mistakenly request that the Court evaluate the subpoena under

16  *Columbia Insurance v. Seescandy.com*, 185 F.R.D. 573, 578-580 (N.D. Cal. 1999) as

17  explained in *In re Ex Parte Application of Jommi*, 2013 U.S. Dist. LEXIS 163201, 2013

18  WL 6058201 at *4 (N.D. Cal. 2013).  The *Columbia Insurance* factors do not set forth any

19  meaningful analysis for the Court to utilize in this case, as *Jommi* involved an <u>unopposed</u>

20  application for discovery under 28 U.S.C. § 1782, which the Court granted, in the same

21  manner that this Court allowed Applicants to serve TeamBlind with the subpoena.  *Id*.  In

22  *Jommi*, First Amendment concerns were not brought to the Court's attention by the parties

23  applying for the subpoena, just as Applicants omitted any such references in their

24  application to this Court and this Court did not evaluate First Amendment issues in the

25  June 28, 2021 order.[21]  *Columbia Insurance* simply does not apply in this case.

26

27  [21] Docket no. 1, Ex Parte Application and Memorandum in Support of Ex Parte Application to
Issue a Subpoena Pursuant to 28 U.S.C. § 178; Docket no. 5, June 28, 2021 Order.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4850-5549-8236.1                                           10                                    4:21-mc-80084-DMR
SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON
EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

1

2

3

C.     **Under *Highfields*, Applicants Do Not Meet the Two-Pronged Test and the Court Should Quash the Subpoena**

1.     **First Amendment Rights of Anonymous Speech Prohibit Production of Any Information by TeamBlind**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

Applicants take the erroneous position that the two pronged test in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) is inapplicable because the subject of the allegedly defamatory statements constitute a personal matter regarding Mr. Kwon's personal life, as opposed to statements regarding Woori Bank or an issue of public concern.  In *Highfields*, the speech at issue was postings of "sardonic commentary on a public corporation, through irony and parody, these bulletin board postings express dissatisfaction with the performance of the stock and the way company executives choose to spend company resources."  *Id*. at 975.  In this case, the anonymous posters statements, fall squarely within the *Highfields* analysis, as the matter pertains to criticism regarding an organization, and/or its leadership.  *In re DMCA Subpoena to Reddit, Inc.*, 383 F. Supp. 3d 900, 910 (N.D. Cal. May 17, 2019) (*Highfields* test applied to criticism of Jehovah's Witnesses, referencing "activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals.");  *Awtry v. Glassdoor, Inc.*, Case No. 16-mc-80028-JCS, 2016 U.S. Dist. LEXIS 44804, *38-43 (N.D. Cal. April 1, 2016) (applying *Highfields* test in evaluating statements critical of company on Glassdoor website).

20

21

22

23

24

25

Assuming that the post refers to Mr. Kwon, the post pertains to an issue of public concern, in light of its apparent criticism of the leadership, performance and working conditions of Woori Bank, which reports to the Securities Exchange Commission that it is "one of the largest commercial banks in Korea" and further confirms that "We provide a wide range of products and services to our customers, which mainly comprise small- and medium-sized enterprises and individuals, as well as some of Korea's largest

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

corporations."[22]  Woori Bank's stature and significant public exposure are further

enhanced by Woori Bank's substantial connection to the Korean government, another fact

which Applicants do not deny in the Opposition.[23]  Applicants urge this Court to ignore the

general tenor of the entire post, which is directly critical of Woori Bank and its leadership

and policies.  Applicants' request is unsupported.  *Knievel v. ESPN*, 393 F.3d 1068, 1074-

1075 (9th Cir. 2005).

### 2.    Mr. Kwon is, at a Minimum, a Limited Purpose Public Figure

While Applicants do not dispute Mr. Kwon's position as the representative director

of one Korea's largest institutional entities, nor Woori Bank's substantial connections to

the Korean government, their efforts to avoid the label of public figure are unavailing.

Public figures, like public officials, "have assumed roles of especial prominence in the

affairs of society" and "must accept certain necessary consequences" of that status.  *Gertz

v. Robert Welch, Inc.*, 418 U.S. 323, 344-345 (1974).  Mr. Kwon is, at a minimum, a

limited purpose public figure, as, around the time of the allegedly defamatory post in

February, 2021, he was running for representative director, the equivalent of Chief

Executive Officer, of Woori Bank.[24]  The Ninth Circuit has "defined the 'scope of the

---

[22] Docket no. 9-1:  Declaration of Justin S. Kim, ¶2a; Exhibit 1, Woori Financial Group, Inc. April 21, 2021 Annual Report, pg. 44, "Item 4.B. *Business Overview*."  As explained in footnote 1, supra, Woori Financial Group, Inc. reports that its business operations are identical to Woori Bank.

[23] See, pages 37-44 of the April 30, 2021 Form 20-F filing with the Securities Exchange Commission, Docket no. 9-1, Exhibit 1 of the Declaration of Justin S. Kim, explained on pg. 4:6-15 of TeamBlind's Motion and unopposed Request for Judicial Notice.

[24] By Applicants' own admission, Mr. Kwon "has been in charge of overseeing and directing the financial services provided by the Bank."  Declaration of Jae Ho Kim, Docket no. 1-2, pg. 2 of 4, ¶4.  Applicants further state:

> Woori Bank's Representative Director must be elected through the Board of Directors and general meeting of shareholders of Woori Bank. During February and March 2021, Mr. Kwon was being considered for reelection as Representative Director pursuant to the Bank's rigorous selection and election process. . . The Committee conducts a review with regard to a candidate's personal information, career, and whether or not a candidate satisfies the eligibility requirements stipulated in the relevant regulations such as the Act on the Corporate Government of Financial Companies and internal regulations."  [*Id*. at ¶5.]

Applicants even take the position that the post was an attempt to "improperly influence the Bank's
(footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4850-5549-8236.1

12

4:21-mc-80084-DMR

SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON
EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

1 │ public concern element . . . broadly" and "adopted a 'liberal construction of what an issue

2 │ of public concern is under the First Amendment." *Desrochers v. City of San Bernardino*,

3 │ 572 F.3d 703, 709-710 (9th Cir. 2009) (citations omitted).  Mr. Kwon "sought to influence

4 │ resolution of the public issue" and "thrust him or herself into the public eye." *Ampex*

5 │ *Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005).  Notably, Applicants' original

6 │ application for the 28 U.S.C. § 1782 subpoena included various Korean news stories

7 │ purportedly highlighting Mr. Kwon's activities with Woori Bank.  *See* Declaration of

8 │ Keebong Paek filed April 20, 2021, Exhibit I, Docket no. 1-5, pgs. 63-67 and 73-80 of

9 │ 173.

10 │      Applicants erroneously describe the post as pertaining to Mr. Kwon's personal life,

11 │ while completely ignoring the statements in the post which are critical of Woori Bank and

12 │ its leadership.  "If some part of the communication addresses an issue of public concern,

13 │ the First Amendment's protections are triggered even though other aspects of the

14 │ communication do not qualify as a public concern." *Hyland v. Wonder*, 972 F.2d 1129,

15 │ 1137 (9th Cir. 1992).  Again, the references to working conditions, leadership performance

16 │ or lack thereof, confirm that the post, viewed in the aggregate, was posted in the context of

17 │ Mr. Kwon's role as the representative director of Woori Bank.  At the very least, the Court

18 │ should consider this context in evaluating both the first and second *Highfields* prongs.

19 │           **3.**       **The Balance of Harms Under *Highfields* Weigh in Favor of**

20 │                     **Vacating the Order and Quashing the Subpoena**

21 │      Applicants have made clear, in no uncertain terms, that they will continue their

22 │ campaign of seeking out and punishing the anonymous poster, if necessary, by tracking

23 │ down the poster to his or her apartment or home and pursuing criminal prosecution.[25]  In

24 │ all practicality, Applicants' campaign serves to deter anonymous speech by its own

25 │

26 │ _____

27 │ election process." *Id*. at ¶6.
   │ [25] Declaration of Keebong Paek filed April 20, 2021, Docket no. 1-4, ¶18.

28 │

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

SUBPOENA RESPONDENT TEAMBLIND INC.'S REPLY IN SUPPORT OF MOTION TO VACATE ORDER ON
EX PARTE APPLICATION AND QUASH SUBPOENA OF WOORI BANK AND KWANG SEOK KWON

1  employees and the Court should find that, under the second *Highfields* prong, the balance

2  of the magnitude of harms should weigh against Applicants.  Any disclosure order would

3  substantially limit the ability of anonymous speakers to utilize TeamBlind's platform and

4  would result in chilling the speech of Woori employees, as well as other wage earners

5  throughout all sectors of the Korean economy.

6      The Court should consider the global dynamics of the instant request and the

7  substantial implications on speech which may offend exceedingly well connected

8  individuals such as Mr. Kwon, who can pursue criminal prosecutions against individuals

9  critical of his policies.  See *In re Komanokai*, case no. 20-mc-80149-KAW, 2020 WL

10  6684565 at *8 (N.D. Cal. November 12, 2020) ("Court finds that the subscriber

11  information is being sought for the improper purpose to harass or intimidate the user into

12  removing the negative [online] review, and for that reason, denies the [28 U.S.C. § 1782]

13  application.")  Even if the applicant satisfies the discretionary *Intel* factors, "[a] request

14  should be denied if the court suspects that the request is a fishing expedition or a vehicle

15  for harassment." *In re Hedrick House Ltd*., case no. SA MC 20-00005-DOC (DFM), 2020

16  WL 3965999, at *1 (C.D. Cal. Mar. 31, 2020) (citing *In re Premises Located at 840 140th*

17  *Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011)).[26]

18      The post is analogous to the speech in *In re PGS Home*, case no. 19-mc-80139 JCS,

19  2019 U.S. Dist. LEXIS 204520 at 16*, 2019 WL 6311407 (N.D. Cal. Nov. 25 2019)

20  wherein the Court quashed a similar subpoena seeking identifying information, finding:

21      Applying the *Highfields* test, the Court concludes that PGS has not shown a
        "real evidentiary basis" that the Tweets caused real harm to PGS and even
22      if it has, **the harm to commercial speech of requiring disclosure**

23

24  [26] Applicants' reference to *United States v. Glassdoor, Inc. (In re Grand Jury Subpoena)*, 875 F.3d
    1179 (9th Cir. 2017) is inapposite, as it involved a criminal investigation being pursued by the
25  United States and federal grand jury subpoena, which was evaluated under a completely different
    analytical framework, *Branzburg v. Hayes*, 408, U.S. 665, 679-680 (1974).  875 F. 3d at 1191.
26  The Court found that the grand jury investigation into "alleged fraud and abuse by a government
    contractor that administers veterans' healthcare programs" prevailed over concerns of First
27  Amendment anonymity. *Id*.

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**outweighs the harm to PGS**. With respect to the harm, it appears from the content of the Tweets that the poster is a customer of PGS. Read in context, it is obvious that the speaker's references to the possibility of a "scam" and accusations that the company does "crappy construction" and treats customers "like complainers" are not so much statements of fact but simply a "rant" by a dissatisfied customer and therefore would be unlikely to cause real harm to PGS. **But even if these Tweets did cause real harm, that harm is outweighed by the First Amendment concerns related to disclosing the speaker's identity.** The statements in the Tweets constitute legitimate commercial speech that enjoys First Amendment protection. [*Id.*, emphasis added].

Mr. Kwon remains as the representative director of Woori Bank, seven months following the February 16, 2021 post, which purportedly caused him distress. As referenced previously, the subject post was removed approximately one hour after it was displayed. Applicants' alleged harm from the post is outweighed by the First Amendment concerns implicated by any disclosure order.[27]

### D.    TeamBlind Maintains Its Remaining Objections to the Subpoena

Applicants further dispute that their subpoena is overbroad or requests confidential or proprietary information. TeamBlind maintains its objections, in full, to the subpoena, based on these grounds for the reasons discussed in its moving papers.

## IV.    CONCLUSION

TeamBlind respectfully requests that the Court grant the Motion to quash and vacate the June 28, 2021 Order which authorized Applicants' subpoena to TeamBlind.

DATED:  September 24, 2021            LEWIS BRISBOIS BISGAARD & SMITH LLP

By:      */s/ Justin S. Kim*
         Attorneys for Subpoena Respondent
         TEAMBLIND, INC.

---

[27] Applicants further reference TeamBlind's Privacy Policy for the proposition, that TeamBlind's policies disclose that it may provide information in response to legal requests. However, TeamBlind does not waive its user's First Amendment rights of anonymous speech and nowhere in the Privacy Policy does TeamBlind indicate any such waiver. Docket no. 12-3, Supplemental Declaration of Jae Ho Kim, Exhibit V, TeamBlind Privacy Policy, pgs. 34-36 of 36.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW